

FILED
JUL 2 7 2017
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| Winston Grey Brakeall,<br>        Plaintiff, | Civ No.: 17-4101 |
| v. | |
| Jenifer Stanwick-Klimek,<br>Josh Klimek,<br>Dennis Kaemingk,<br>Robert Dooley,<br>Kelly Tjeerdsma,<br>Nicole St. Pierre,<br>Tammy Mertens-Jones,<br>Annie Antrobus,<br>Unknown CBM Food Services Staff,<br>Unknown Department of Corrections Staff<br>Members,<br>Unknown Department of Health Employees,<br>South Dakota Department of Corrections,<br>South Dakota Department of Health,<br>        Defendants. | **VERIFIED**<br><br>**CIVIL RIGHTS COMPLAINT**<br><br>**WITH JURY DEMAND** |

Plaintiff, Winston Grey Brakeall, deposes and states as follows:

## INTRODUCTION

This is a civil rights action filed by Winston Grey Brakeall, a state prisoner confined at

the Mike Durfee State Prison in Springfield, South Dakota. Plaintiff is suing for damages,

declaratory, and injunctive relief under 42 U.S.C. § 1983, alleging that defendants violated, and

conspired to violate his rights, as defined by the Bill of Rights and the Fourteenth Amendments

of the United States Constitution. The plaintiff also alleges South Dakota State Constitutional

claims. Plaintiff asserts claims under the Americans with Disabilities Act, Title I and II, and

under the Religious Land Use and Institutionalized Persons Act.

1

## I.      JURISDICTION

1.      The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. § 1331(1) and 1343.

2.      The Court has supplemental jurisdiction over the plaintiff's state constitution claims under 28 U.S.C. § 1367.

## II.      VENUE

3.      The Southern Division of South Dakota is the proper venue as all actions described herein took place at the Mike Durfee State Prison, Springfield, South Dakota.

## III.      PARTIES

Plaintiff:

4.      Plaintiff, Winston Grey Brakeall, is and was at all times mentioned herein, incarcerated at Mike Durfee State Prison, Springfield, South Dakota.

Defendants:

5.      Jenifer Stanwick-Klimek is an associate warden at Mike Durfee State Prison and is sued individually and in her official capacity.

6.      Josh Klimek is the East and West Crawford Unit Manager at Mike Durfee State Prison and is sued individually and in his official capacity.

7.      Dennis Kaemingk is the Secretary of Corrections for the State of South Dakota and is sued individually and in his official capacity.

8.      Robert Dooley is the Director of Prison Operations and Warden at Mike Durfee State Prison and is sued individually and in his official capacity.

9.      Kelly Tjeerdsma is a corporal at Mike Durfee State Prison and is sued individually and in her official capacity.

10.   Nicole St. Pierre is the Chapel Activities Coordinator at Mike Durfee State Prison and is sued in her individual and official capacity.

11.   Tammy Mertens-Jones is the Chapel Activities Coordinator at the South Dakota State Penitentiary and is sued in her individual and official capacity.

12.   Annie Antrobus is the CBM Food Services Manager at Mike Durfee State Prison and is sued individually and in her official capacity.

13.   Unknown CBM Food Services Staff at Mike Durfee State Prison are sued individually and in their official capacity.

14.   Unknown Department of Corrections Staff Members at Mike Durfee State Prison are sued individually and in their official capacity.

15.   Unknown Department of Health Employees at Mike Durfee State Prison are sued individually and in their official capacity.

16.   South Dakota Department of Corrections.

17.   South Dakota Department of Health.

## IV.   FACTS OF COMPLAINT

### A)   CRUEL AND UNUSUAL PUNISHMENT:

18.   Plaintiff, Winston Grey Brakeall, is 6'9" tall and morbidly obese with a Body Mass Index (BMI) of 37.5.

19.   Upon reaching the South Dakota State Penitentiary in 1997, the Department of Corrections made an extended bed for plaintiff so he could lie flat. He was also issued an extra mattress and extra blankets and pillows because of his size.

20.   In 2000, plaintiff was transferred to East Hall and a second customized bed was made for him. The additional mattress and bedding were also issued.

21. When plaintiff was transferred to Mike Durfee State Prison in 2005, staff had been alerted to his size issues and a medical bed with a one foot mattress extension was waiting.

22. Plaintiff was returned from parole to South Dakota custody on suspicion of a parole violation in November 2014. Upon reaching the Jameson Prison Annex, he informed staff that he was too tall to sleep in the cells, which have built in bunks across the 6'5" width of the cell.

23. Despite watching plaintiff duck to go through the doors, Jameson staff stated that there was no record of his height or weight or of any accommodation being made for him.

24. Plaintiff was assigned the top bunk, roughly six feet off the floor, in a three man cell. He was unable to climb to the bed. Until being transferred to East Hall in the South Dakota State Penitentiary in December, six weeks later, he slept on the cell floor.

25. East Hall staff, many of whom plaintiff had known for years prior to parole, stated they had no record of his height or weight and did not have any orders for keeping him on first floor, bottom bunk, or to be given extra bedding.

26. Several days later, plaintiff was moved to the West Hall housing unit after being assaulted and assigned the middle bunk of a triple stack. The top bunk was roughly 20 inches from the middle bunk and plaintiff regularly bumped his head and shoulders on the upper bunk.

27. Plaintiff's parole was reinstated and he was moved to the Community Transition Program (CTP) at Unit C. He was initially assigned the top bunk of a triple stack, but he was allowed to move to a middle bunk and was given extra bedding as a temporary extension.

28.   In December 2015, plaintiff was detained and moved to East Hall. No accommodation was made for his height. In February 2016, plaintiff was moved to West Hall after a second and third assault and given an extra mattress by Unit Manager Keith Ditmanson.

29.   Plaintiff's parole was violated in July 2016 and he was transferred to Mike Durfee State Prison. He was assigned to the West Crawford housing unit.

30.   Unit Coordinator Britney Ulmer told plaintiff that a bed would be modified once he found a "permanent" room.

31.   In October 2016, plaintiff was moved to room 118 and was assigned the bottom bunk in a three man room, roughly five inches off the floor.

32.   After nine months, the bed has not been modified. It is roughly 6'2" long and plaintiff is forced to sleep with his feet pushed through the crossbars at the bottom. Because of the crossbar, plaintiff cannot use a second mattress to accommodate his weight and suffers persistent hip and back pain.

33.   Plaintiff has spoken to Unit Manager Josh Klimek repeatedly about the promised modification of the bed or getting a mattress extension similar to the one provided from 2005-2012. Mr. Klimek continues to say he's "looking into it."

34.   Plaintiff has given many kites to Mr. Klimek, which have been unanswered, and filed a grievance, which was never returned.

35.   On the rare occasion plaintiff finds Mr. Klimek on the housing unit he nominally manages, Mr. Klimek's response continues to be, "I'm looking into it."

36.   Plaintiff has signed up to see Klimek at his scheduled "open door" periods at least fifty times in the past months and the only time he has seen Mr. Klimek was in passing at the desk.

**B)**   **LAW LIBRARY:**

37.   On June 5, 2017, inmates at Mike Durfee State Prison were issued 7" tablets which have intermittent access to LEXIS.  The LEXIS application provided contains only a portion of the required texts that the Department of Corrections refers to in the "settlement agreement," reached after a Department of Corrections attempt to eliminate the law library completely in 1998. (Based on earlier settlements reached in *Morris v. State*, Civ. 98-4118 and *Scholl v. Delaney,* 98-4068)

38.   While inmates do have access to some case law through the tablets now, many of the texts included in the settlement agreement are not present. Inmates are not allowed to use their tablets in the law library and the word processors inmates use for typing legal document do not have the LEXIS application.


**C)**   **RELIGIOUS DISCRIMINATION (R.L.U.I.P.A.) :**

39.   Plaintiff is Jewish and established the Jewish service at Mike Durfee State Prison in 2006. He attended virtually every Sabbath and Havdalah service for nearly 7 years and organized every holy day observation until his release on parole in 2012.

40.   Chapel Activities Coordinator (CAC) Nicole St. Pierre would not allow plaintiff to participate in the Passover meals during the holiday in 2017. No explanation was given. Plaintiff has observed Passover every year the prison offered it and requested to participate this year as well.

41.   CAC St. Pierre initially refused to allow plaintiff to participate in the fast for the 9th of Av on August 1, 2017 because he does not attend Jewish services. This has not been a requirement.

42.   Plaintiff kited CAC St. Pierre about this, asking the source of her discretion to override the First Amendment. He received a slip for the fast the next day. However, he has been on the "fast list" before and not received the sack lunches on earlier fasts and cannot be sure he will actually be given the sacks until they are delivered. Many other inmates have been removed from the 9th of Av fast list for failing to attend the required percentage of services and were not placed on the list later.

43.   Tammy Mertens-Jones is the supervisory Chapel Activities Coordinator at the South Dakota State Penitentiary in Sioux Falls. She has issued orders for all facilities in the Department of Corrections that inmates who do not attend a certain percentage of services will not be allowed to participate in the holy days of their faiths.

44.   Plaintiff does not attend services with any of the Jewish groups currently operating at Mike Durfee State Prison because, since he left on parole, his original service has splintered into a homosexual date night service, a Kabala mysticism service, and a messianic Christian service, none of which are compatible with his personal beliefs.

45.   Plaintiff has attended several of the new services and the congregants were baffled when plaintiff recited blessings in Hebrew, a language none of them recognized.

46.   Plaintiff did not attend Purim, Shauvot, or any of the holy day celebrations this year because he was unwilling to associate with the congregations available.

47.   Plaintiff does not wish to organize a Reform service, but does wish to observe the holy days in accordance with his faith.

48.   There is no kosher meal option in the South Dakota Department of Corrections, based on information provided during discovery in *Dale v. Tjeerdsma*, 217 US Dist. LEXIS 23404.

**D)   PHYSICAL PLANT / OVERCROWDING / EXCESSIVE HEAT:**

49.   The Mike Durfee State Prison is a former state college/technical school, which was designed and built sometime in the 1950-60s.[1]

50.   Rooms at Mike Durfee State Prison were originally designed and built to accommodate two persons only. Even after the prison remodeled the buildings, the fundamental two person structure remains. There are two desks, two closets, two sets of storage drawers, one window, one fan.

51.   However, the Department of Corrections crams three people into these rooms with no provision for the third inmate. Inmates are expected to "figure out" their own division of two sets of fixtures for three people.

52.   The Department of Corrections has also torn down the walls between many of these rooms to make nine-man rooms. Nine inmates are crowded into the floor space meant for four. Furniture suitable for six inmates is in each of these rooms. These rooms are sites for constant trouble and friction between the inmates.

53.   West Crawford is a three story building with each floor having 3 shower heads, 3 toilets, 3 urinals (without partitions), and 5 sinks for the roughly 70 inmates per floor. The shower heads are arranged so that two shower heads share the same floor space. If the plaintiff is using the shower head on the east wall, the shower head on the south wall sprays his thighs. Functionally, there are only two shower heads on each floor.

54.   Lines to use the facilities are encountered daily. Staff requires the restrooms to be cleaned once per day, which is insufficient considering the volume of use. Using facilities on a different floor is against the rules.

---

[1] I have written Bon Homme County zoning and planning for specific design capacity information, but have received no response.

55.  On first floor, the inmate changing area for the inmate showers was converted into a handicapped access shower area. When an inmate is using the handicap shower, it is impossible to access the regular shower because of the wheelchair blocking the door to the main shower room.

56.  The over-simplified reactive response to the need for handicap access now prevents non-handicap inmates from accessing the shower.

57.  The handicap toilet is simply a stool on the wall in front of the restroom door, with no privacy at all, allowing passersby in the hall to freely observe any handicapped inmate using the facility.

58.  There is no ventilation in the building, period. When inmates are showering, the ceiling rains drops of condensation on inmates using the toilets; toilet paper becomes saturated, and the floor is wet, causing safety issues.

59.  Black mold and mildew grow on the shower ceiling and the ceilings in the shower and toilet area have to be stripped and repainted several times each year due to the constant moisture and fungal growths. This mold issue exacerbates respiratory distress that requires me to take medication.

60.  The inmate laundry is not of sufficient size with enough machines to do all of the laundry. As a result, inmate clothing, bedding, and linen is returned dirty and always damp because it never gets dried.

61.  Inmates were previously issued with white boxer underwear, which was commonly stained with urine and feces. Because of economy measures, the prison frequently reissues used underwear. Instead of fixing the issues with the inadequate washing

machines, the prison now issues brown boxer shorts, so the urine and feces stains are not visible.

62.    The inmate dining hall is roughly 150 yards from the "kitchen" where food is prepared. Inmate kitchen workers regularly cart food across the compound, sometimes uncovered, and this food is often spilled on the sidewalks or road while walking it to the dining hall.

63.    Inmate regular library time is 45 minutes, twice per week. This is frequently canceled. Due to the capacity of the library and lack of time, plaintiff must sign up many times before he actually gets to go to the regular library. Regular library time is in conflict with law library hours, requiring inmates to make a choice between the two.

64.    East and West Crawford share a "walking area" and residents of these two halls are only allowed to go into the building "yard" in separate turns. Every other building in the Mike Durfee State Prison facility has its own yard and inmates are allowed outside almost all day.

65.    The daily heat makes the walking areas unusable during most of the afternoon. When West Crawford has the 2:30 to 4:00 pm time slot, there are rarely any inmates outside. A shaded area with tables exists, but inmates are not allowed to use them.

66.    Due to the fact that East and West Crawford units were designed and built with air conditioning, no other ventilation was installed. When the air conditioning unit broke, it was simply unhooked.

67.    The East and West Crawford heating systems were rebuilt in 2010. At that time, the prison installed new air handling units in each room with outside vents below the windows. On the first floor, these vents are six inches above the soil. The surface below

the lower vents should be concrete or asphalt. Insects, especially ants, find easy access to the inmate rooms through these vents. The vents provide no air circulation.

68.   Plaintiff's morbid obesity inhibits his body's ability to thermoregulate or maintain its temperature. As a result of the high heat indices in the building, the excessive heat is damaging his internal organs due to their inability to dissipate heat because of the fat layer. Plaintiff sweats excessively due to the constant heat and experiences severe cramps in his legs and arms. Plaintiff has fallen repeatedly attempting to stand for count when his calves cramped and would not support him. Plaintiff could easily die from heat stroke.

69.   Plaintiff is prescribed three antihistamines for respiratory distress. These drugs act by blocking acetycholine, which is the neurotransmitter that drives sweat glands. This interference with the body's ability to sweat in an already toxic environment causes the effects of heat exhaustion to be amplified. Plaintiff suffers daily headaches, has difficulty reading due to being light-headed and unable to concentrate, is dizzy most of the day, and becomes faint on standing, requiring several moments before he can release the bed to walk away.

70.   Temperatures exceed a heat index value of 100° and stay that high for as much as ten hours a day. Plaintiff is forced to lay on sweat-soaked sheets in front of his personal fan without moving to avoid worse discomfort. The sensation is much like laying in an oven in front of a blow dryer, only incessantly damp. Even though the world cools at night, there is no way to introduce this air into the building because there is no ventilation system and the concrete block walls and brick exterior continue to radiate heat for hours after sundown.

71.   The Department of Corrections recognizes there is a problem with the dangerous heat because certain inmates are allowed air conditioning units in their rooms. I have detailed my issue to medical and Klimek with no results.

72.   Defendants have responded to plaintiff's grievances over the heat issue with advice that "Inmates are encouraged to drink plenty of fluids and refrain from strenuous activity during times of extreme heat." When "extreme heat" lasts for days, one wonders how useful that advice could possibly be. There are no cooling stations or respite areas for inmates to use for temporary relief from the oppressive heat.

73.   Inmates are allowed to leave their room doors open one foot for part of the year for ventilation. However, Cpl. Kelly Tjeerdsma made inmates keep their doors shut completely on several days earlier in the year when the heat indices were over 95° and threatened to throw inmates in the SHU for trying to get fresh air in their rooms.

74.   Cpl. Kelly Tjeerdsma is currently assigned to West Crawford Hall and on 100° days makes inmates close their doors for count and keep them closed for up to 30 minutes after count has cleared. The room temperatures raise dramatically in a very short time. This can only be considered ill intent.

75.   A correction officer told me that a maintenance worker brought a "heat gun" style thermometer to West Crawford in 2016 and recorded temperatures inside the building at 113 ° and was told by the administration "not to do that again if you like your job."

76.   In the summer of 2016, an inmate kitchen cook brought home his "meat thermometer" and the temperature in plaintiff's room was 105°.

77.   Cpl. Kelly Tjeerdsma regularly closes the inmate day halls and leaves them closed, denying inmates access to ice and drinking water, again in order to punish inmates.

78.  Unit Manager Klimek has now implemented a policy that turns the ice machine off for all but three to four hours a day. It is off during the heat of the day. Klimek has personally said to me, "I don't want inmates to get too comfortable." Only Cpl. Kelly Tjeerdsma goes above and beyond this by refusing to open the day halls during the scheduled hours of operation.

79.  Due to the excess heat and lack of ventilation, the doors to the housing units remain open continuously for months, allowing flies, mosquitoes, and rodents from the outside to freely enter the building unabated and infest the restrooms and inmate rooms.[2] Plaintiff has repeatedly seen cats and ground squirrels running around the first floor.

80.  It is necessary to kill numerous mosquitoes in the inmate showers prior to showering and hundreds of flies swarm around the trash bins in the restrooms and inmate rooms. Fly strips hanging over the officers' desk are black with flies, but inmates are not allowed fly strips for their rooms and fly swatters are classed as weapons.

81.  The Barracks housing unit, in which plaintiff was held when he arrived at Mike Durfee State Prison, and to which he could be returned if his classification changes, was designed to have air conditioning. However, the only air conditioning in the building is in the staff areas. The Department of Corrections recognizes the inhumanity of forcing their guards to remain in this environment for eight hours a day without air conditioning, but requires inmates to endure it for months on end.

---

[2] West Nile virus has been confirmed in mosquitoes in Yankton County, one county east of Bon Homme, and rodents and flies carry a number of other diseases posing a danger to inmate and public health.

**E)      FOOD SERVICE:**

82.   CBM Food Services, the South Dakota Department of Corrections, South Dakota

Department of Health, Annie Antrobus, Robert Dooley, and Dennis Kaemingk are

conspiring to violate inmate rights under the Eighth Amendment to the United States

Constitution by failing to provide a diet to inmates that is wholesome and nutritious and

will maintain inmates in good health.

83.   Plaintiff was recently placed on a vitamin B-12 supplement due to the deficiencies of the

diet and the chronic medical issues which result, including neuropathy, or lack of

sensation, in the extremities.

84.   Dr, Melvin Wallinga and P.A. Brad Adams, as well as several nurses, have all told the

plaintiff that the food service at Mike Durfee State Prison is the main reason he can't lose

weight and is unhealthy. They also tell diabetics that the diet provided here is the cause of

the common inability to maintain blood sugar levels in a safe range. They have stated to

plaintiff and other inmates that they informed unknown Department of Health employees

at the "annual health conferences" that the diet is responsible for many health concerns,

even for those without underlying conditions.

85.   Department of Corrections and Department of Health staff are well aware of the diet

issues with CBM Food Services and do nothing to improve conditions, thereby

continuing to damage inmate health.

86.   The only "leafy vegetable" provided is a few leaves of iceberg lettuce drowned in salad

dressing. No fresh fruit is ever provided on the main serving line.

87.   The diet approved by the CBM Food Services dietician is starch based, revolving around

variations on pasta (mac and cheese, goulash, spaghetti, meat-a-roni, chili mac) and rice

(stroganoff, jambalaya, Spanish rice,). The serving size depends on one's position in line (the last inmates get progressively smaller portions to avoid running out entirely) and are usually cooked to paste.

88.    Several times plaintiff has shown the Officer in Charge in the dining hall his tray and complained about serving sizes or content. About 2 months ago, plaintiff attempted to show Lt. Dufer my tray and he stated "The last time I took photos of an inmate tray, I was told by the administration to never do that again. It's messed up, but I can't help you." The administration is aware of the problem and does not correct it. Department of Corrections staff, Department of Health staff, and CBM Food Services personnel are conspiring to violate plaintiff and all Mike Durfee State Prison inmates' rights to a nutritious meal in the interest of profit.

89.    SCO Mike Myer has told me that he has been on the loading dock supervising food deliveries and seen packages clearly labeled "not for human consumption."

90.    CBM Food Services also provides the commissary for the Department of Corrections. Everything inmates eat provides CBM Food Services with a profit.


**F)   AMERICANS WITH DISABILITIES ACT:**

91.    The State of South Dakota and the South Dakota Department of Corrections accept federal funding and are subject to compliance with the ADA, Title I and II. Plaintiff has been excluded from the benefits of programs, services, and activities, and has been subjected to discrimination.

92.     Plaintiff is morbidly obese with respiratory issues, endocrine circulation issues, mobility issues, dietary issues, and stomach and digestive issues, and has been subjected to employment discrimination by a public entity.

93.     Plaintiff's disabilities affect his ability to perform manual tasks, eating, sleeping, walking, bending, standing, lifting, breathing, and thermoregulation in both summer and winter.

94.      Since coming back to Mike Durfee State Prison, plaintiff has been diagnosed with Hashimoto's Thyroiditis, an endocrine system issue, which affects the ability of his body to effectively control and regulate its temperature.

95.     In early August 2016, inmate Patrick Stoner was working as a clerk in the maintenance department for Rob (unknown last name). Stoner told plaintiff he was getting out on parole and suggested plaintiff apply for his job. Plaintiff sent a kite to Rob, asking to interview as his clerk.

96.     The kite was returned to plaintiff with a simple "No" as the answer. Plaintiff later asked Stoner what the problem was and he stated, "My boss thinks you'll have a heart attack or something if you have to pick up a box or something and he also said we don't have a chair big enough for you."

97.     Since then, plaintiff has signed up for every unit job posting and sent work applications to every job site and supervisor.

98.     A Construction Technology shop worker told me that he gave plaintiff's application to Travis (Prison Industries supervisor) (unknown last name) and Travis said to tell plaintiff, "We don't hire out of state chomos."

99.   Plaintiff is unable to attend recreation due to heat related and mobility issues. Previously, the Department of Corrections provided several canopies in the rec yard for shade.

100.  These rec yard canopies are now only used in the dog run, protecting the animals while the inmates are exposed to the full sun without any protection. Dogs are "rehabilitated" by inmates as part of a training program. The animals are housed in an enclosure in the rec yard. The kennels are air conditioned.

101.  The diet plaintiff is served is well below nutritional standards and will not maintain an inmate in good health. There are very few fresh vegetables and fresh fruit has not been served on the main line in years.

102.  Plaintiff often does not get access to legal books he needs or a word processor because he is unable to run/jog to the law library and the norm is first come/ first served.

103.  Plaintiff has to make numerous contact attempts in order to see mental health and had no answer at all to multiple kites until UM Klimek emailed Amy Dean in late September 2016. Plaintiff filed many kites after that and saw her on the sidewalks by health services or the law library, where she told him she had received his kites and would call him over "tomorrow." After several months of not being called, plaintiff filed a grievance in January 2017 and she stated that he had never attempted to contact her. Several weeks and kites later, Sheila (last name unknown) called plaintiff to mental health.

104.  Plaintiff sends in kites requesting help with his anxiety most weeks, but has only seen Sheila three times since February, due to the excessive case load and minimal staff.

105.  Plaintiff has excessive thirst due to the inability of his body to properly cool itself and frequently urinates. He had to cut short a visit with his parents before a parole hearing in order to use the restroom and the Department of Corrections policy on not allowing

17

restroom use during visits. Many maximum security facilities in other states and the federal prison system are able to accommodate restroom use during visits, but the South Dakota Department of Corrections is unable to find the same accommodation for their low-medium inmates at Mike Durfee State Prison.

## V.      LEGAL CLAIMS

### CRUEL AND UNUSUAL PUNISHMENT:

106.   Due to the heat and humidity in the laundry, plaintiff lost nearly thirty pounds while working in September-November 2016. He suffered dizziness and frequent shortness of breath and was constantly soaked with sweat. The conditions maintained by Robert Dooley and the South Dakota Department of Corrections in the laundry were cruel and inhumane.

107.   Due to Josh Klimek's failure to provide a suitably adapted bed for him, Plaintiff suffers constant back and knee pain from being forced to sleep in a short bed that is only five inches off the floor. This is done under the supervision of Dennis Kaemingk, Robert Dooley, Jenifer Stanwick-Klimek, and is a violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

108.   Josh Klimek is subjecting plaintiff to cruel and unusual punishment by failing to accommodate his size and disability and shows a deliberate indifference to his needs. A violation of the Eighth Amendment to the United States Constitution.

109.   Kelly Tjeerdsma and Josh Klimek conspire to violate inmate rights in subjecting plaintiff and all inmates under their care and custody  to cruel and unusual punishment  by forcing

18

them to close their doors when it's excessively hot under Klimek's own personal policy

and refusing to allow access to ice, soda, and drinking water from the day hall by refusing

to open the day hall during posted hours. Klimek believes he can make rules and policy

by simply writing things on a piece of paper and posting them on the unit, then

disciplining inmates using the ambiguous "conduct which disrupts" write-up. Klimek

believes he can get away with these practices because his wife is an associate warden. A

violation of plaintiff's Eighth Amendment rights under the United States Constitution and

of due process guaranteed by Amendment Fourteen for disciplining inmates without due

notice of the alleged infraction and by denying them access to the day halls.

110. Failure to provide adequate hygiene and restroom facilities, laundry service that fails to

provide clean linen and clothing, and food service that fails to maintain inmates in good

health, all can and have resulted in the spread of disease and unsanitary living conditions

and is an ongoing threat to plaintiff's health and well-being. These conditions are all the

result of policies and practices established by Dennis Kaemingk, Robert Dooley, and the

South Dakota Department of Corrections and demonstrate that they are deliberately

indifferent to plaintiff's right to be free from cruel and unusual punishment.

111. By not allowing plaintiff or other inmates to use the restroom during visits that are two

hours long, the Department of Corrections is violating plaintiff's right to be free from

cruel and unusual punishment under the Eighth Amendment to the United States

Constitution.

112. By forcing plaintiff and other inmates to choose between law library and regular library,

defendants Jenifer Stanwick-Klimek, Josh Klimek, Dennis Kaemingk, Robert Dooley,

Nicole St. Pierre, who is the library supervisor in addition to being CAC, and the South

Dakota Department of Corrections interfere with plaintiff's access to the courts in violation of his First, Fifth, and Fourteenth Amendment rights.

113.   Dennis Kaemingk, Robert Dooley, and the South Dakota Department of Corrections are well aware that inmates have a right to ventilation and to protection from excessive heat. By failing to repair the air conditioning unit when it became inoperable, defendants knew they were subjecting inmates to extreme temperatures and the possibility of death in violation of their right to be free from cruel and unusual punishment. The recent string of hot weather has already spawned ten days of heat indices exceeding 100° for Springfield and Mike Durfee State Prison. A violation of the Eighth Amendment to the United States Constitution.

114.   Dennis Kaemingk, Robert Dooley, Annie Antrobus, Unknown Department of Health employees, South Dakota Department of Health, Unknown Department of Corrections staff members, the South Dakota Department of Corrections, Unknown CBM Food Services Employees, and CBM Food Services are conspiring to violate plaintiff's constitutional rights by providing a diet that is far below recognized nutritional standards, CBM staff's use of food items labeled "not for human consumption" in their food preparation, constantly changing menu items, decreasing the posted serving size, and not serving items listed in the menu. The deficiencies are so widely known and recognized that the Department of Health regularly tests for vitamin deficiencies as a preliminary screening step in diagnosis. In addition, CBM staff short the servings of protein, increase the carbohydrate servings, and providing limited or no access to items such as fresh fruit, fresh vegetables, anti-oxidants, or leafy vegetables in the dining hall or in commissary, both of which are owned and operated by CBM Food Services. The above defendants are

endangering the plaintiff's health and violating inmates' constitutional rights under the Eighth Amendment to the United States Constitution.

115.   Nicole St. Pierre, Tammy Mertens-Jones, Robert Dooley, Dennis Kaemingk, and Unknown South Dakota Department of Corrections Staff Members are conspiring to deny plaintiff's First Amendment rights to observe the holy days of his faith through requiring religious tests to determine who they feel is worthy to participate.

116.   Dennis Kaemingk, Robert Dooley, and the South Dakota Department of Corrections purposely provide built-in ambiguity to their rules and policies to allow their staff to do whatever they want. As a result, untrained and unsupervised employees that are ignorant of inmates' constitutional rights simply make up their own rules and policies, using the one of the ambiguous "conduct which disrupts"[3] or "failure to follow posted rules and regulations." All rules and regulations need to be printed in the inmate living guide to stop the violations of inmates' right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Inmate David Timperley at one point had a kite signed by Robert Dooley stating that there are "no unwritten rules." This kite was seized in a shakedown and all officers denied its existence.

## AMERICANS WITH DISABILITIES ACT CLAIMS

117.   Plaintiff is a qualified individual with a disability that limits his mobility and is being denied access to programs and services. He also has untreated, diagnosed endocrine system issues. Due to his obesity, his body is unable to properly thermoregulate, resulting in a plethora of medical issues, including the inability to tolerate excessive heat or cold,

---

[3] There are several "conduct which disrupts the safety and good order of the institution" rules, one at each level of severity, allowing officers the maximum discretion to create a violation.

especially the excessive and persistent heat present in West Crawford Hall at the Mike Durfee State Prison. There is <u>no</u> ventilation of any kind in the housing unit or day halls, which were built with air conditioning, now disconnected, and the excessive heat is doing permanent internal organ damage and could easily result in heat related death. Plaintiff is suffering with numerous heat related symptoms, such as chronic headaches, dizziness, lightheadedness, inability to concentrate, constant thirst, and painful urination.

118.   The State of South Dakota and the South Dakota Department of Corrections accept federal funding and are thereby bound by the provisions of the ADA.

119.   Plaintiff is denied a diet that will maintain him in good health due to the excessive carbohydrate content of the menus and lack of protein provided by CBM Food Services and unavailability of nutritious alternatives provided by CBM Food Services through their Commissary branch. All food the plaintiff receives is under the exclusive auspices of CBM Food Services. Plaintiff, like many other inmates, is subjected to this diet for years on end without any alternative.

120.   In addition, CBM Food Services employees and South Dakota Department of Corrections employees are conspiring to violate plaintiff's constitutional rights by failing to take corrective action to remedy the substandard diet. They have been made aware of the multitudinous deficiencies by the Department of Health staff Wallinga, Adams, and Johnson.

121.   Plaintiff is further denied fixtures to accommodate his size and weight, accommodations the Department of Corrections was previously willing to provide in some measure, such as a bed, chair, or shower shoes, when inmates such as Ted Klaudt continue to receive

these accommodations, also making this an Equal Protection issue under Amendments V and XIV to the United States Constitution.

122. Due to his mobility issues or staff members' view of his crime, plaintiff is unable to be employed in the prison. Plaintiff is willing to work with staff to reach reasonable accommodations in order to accept employment.

## AMERICANS WITH DISABILITIES ACT RELIEF REQUESTED

123. A temporary and permanent injunction ordering air conditioning in inmate housing areas to maintain temperatures below a heat index value of 85°.

124. A temporary and permanent injunction ordering air conditioning in the day halls so plaintiff can use the day hall areas.

125. A temporary and permanent injunction ordering access to ice and cold water twenty-four hours, every day.

126. A temporary and permanent injunction ordering CBM Food Services to provide a diet that contains fresh vegetables, leafy greens, antioxidants, a sufficient percentage of quality proteins, and fresh fruit.

127. A temporary and permanent injunction ordering restroom use during visits.

128. A temporary and permanent injunction ordering clean, dry laundry.

129. A temporary and permanent injunction ordering showers, toilets, urinals, and sinks in sufficient quantity for the inmates they are designed to serve, either by increasing the restroom size or reducing the inmate population.

130.   A temporary and permanent injunction ordering defendants to provide a modified bed
       allowing plaintiff to sleep without banging into the crossbars at either end or hanging
       over the end. This bed must be at least 88" long and 17" off the floor with no less than
       38" between it and the top bunk. Either a medical mattress or two standard mattresses,
       with suitable extensions, must be provided.

131.   A temporary and permanent injunction ordering a cushioned chair capable of holding
       more than 350 pounds, in the housing unit, the regular library, and the law library.

132.   A temporary and permanent injunction ordering a job with reasonable accommodations
       and no harassment.

133.   A temporary and permanent injunction ordering prison uniforms; boxer briefs; New
       Balance shoes, slippers, and shower shoes; and winter clothing, all of which fit properly.

## RELIEF REQUESTED FOR CONSTITUTIONAL VIOLATIONS

134.   A preliminary and permanent injunction requiring the South Dakota Department of
       Corrections to immediately provide measures to prevent further damage to plaintiff's
       health by installing an ice machine with sufficient capacity to serve the 200 plus inmates
       in West Crawford hall and allow access to this machine during the heat of the day; install
       some type of useful ventilation or repair the existing air conditioning units or provide an
       air conditioning unit to prevent excessive temperatures in the building and further
       damage to plaintiff's health.

135.   A preliminary and permanent injunction requiring the Department of Corrections to
       increase the laundry, food service, restrooms, recreation, law library, day hall, and toilet
       fixture capacity to meet the prison population, or decrease the number of inmates in each

room to the original design capacity of two and return the nine man rooms to two separate two-man rooms.

136. A preliminary and permanent injunction requiring the Department of Corrections and Chapel Activities Coordinators to allow plaintiff to purchase supplies from outside providers to observe all Jewish holy days without being required to attend existing services.

137. A preliminary and permanent injunction under R.L.U.I.P.A. requiring defendants to permit plaintiff to observe Jewish holy days either in his room or in a chapel room with or without other congregants.

138. A declaration stating that all defendants violated plaintiff's constitutional rights under the Constitution of the United States.

139. A declaration stating that all defendants conspired to violate plaintiff's Constitutional rights.

140. Punitive damages in the amount of $10,000.00 from each defendant.

141. Compensatory damages from the defendants jointly and severally in the amount of $100.00 per day for every day since November 12, 2014 that plaintiff has been forced to sleep on the floor or in a bed shorter than his height.

142. Compensatory damages jointly and severally from the defendants of $500.00 per year for the duration of his incarceration for use in the purchase of supplies for Jewish holy day observances.

143. Punitive damages jointly and severally from the defendants of $1,000.00 per day for every day the heat index at Springfield exceeded 95° in 2016 and 2017.

144. Nominal damages of $1.00 from each defendant.

145.    Any other relief deemed just and appropriate by this court.


I, Winston Grey Brakeall, swear under the penalty of perjury pursuant to 28 U.S.C. §

1746 that the foregoing is true and correct to the best of my knowledge and understanding.

Submitted and sworn to this 25 day of _July_____, 2017.



Winston Grey Brakeall
Mike Durfee State Prison
1412 Wood St.
Springfield, SD 57062