UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION





FILED

DEC 0 8 2017

CLERK

---

WINSTON GREY BRAKEALL,

Plaintiff,

vs.

JENIFER STANWICK-KLEMIK,
Associate Warden, individually and official
capacity;
JOSH KLIMEK,
West Crawford Unit Manager, individually and
official capacity;
DENNIS KAEMINGK,
Secretary of Corrections, individually and
official capacity;
ROBERT DOOLEY,
Director of Prison Operations and Warden,
individually and official capacity;
KELLY TJEERDSMA,
Corporal, individually and official capacity;
NICOLE ST. PIERRE,
Chapel Activities Coordinator, individually and
official capacity;
TAMMY MERTENS-JONES,
Chapel Activities Coordinator, individually and
official capacity;
ANNIE ANTROBUS,
CBM Food Services Manager, individually and
official capacity;
UNKNOWN CBM FOOD SERVICES STAFF,
individually and official capacity;
UNKNOWN     DEPARTMENT     OF
CORRECTIONS     STAFF     MEMBERS,
individually and official capacity;
UNKNOWN DEPARTMENT OF HEALTH
EMPLOYEES,
individually and official capacity;
SOUTH     DAKOTA     DEPARTMENT     OF
CORRECTIONS,

4:17-CV-04101-LLP

ORDER DISMISSING COMPLAINT IN
PART AND DIRECTING SERVICE
IN PART

1

| SOUTH DAKOTA DEPARTMENT OF HEALTH, | |
| :--- | :--- |
| Defendants. | |

Plaintiff, Winston Grey Brakeall, is an inmate at Mike Durfee State Prison (MDSP) in Springfield, South Dakota. Brakeall filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983. Brakeall was granted leave to proceed in forma pauperis. Docket 6. The Court has "screened" this case pursuant to 28 U.S.C. § 1915A. For the following reasons, the court dismisses Brakeall's complaint in part and directs service in part.

## FACTS

Brakeall alleges several violations of his civil rights occurring at MDSP. In part, Brakeall's claims concern his large size and the prison's failure to accommodate his size. Brakeall also makes claims concerning his ability to practice his religion and compliance with the Americans with Disabilities Act. The facts as alleged in the complaint are:

**Cruel and Unusual Punishment**

Brakeall stands 6' 9" tall. *Id.* ¶ 18. He has a body mass index of 37.5 and is morbidly obese. *Id.* Brakeall requires modifications to his bed to lie flat. *Id.* ¶ 19. In 1997, Brakeall was imprisoned at the South Dakota State Penitentiary (SDSP). *Id.* At that time, the Department of Corrections (DOC) extended a bed for Brakeall and issued him an extra mattress, blankets, and pillows. *Id.* ¶ 19. In 2000, Brakeall was transferred to East Hall in SDSP where a second, customized bed was made for him. *Id.* ¶ 20. Brakeall was again issued additional mattresses and bedding. *Id.* In 2005, Brakeall was transferred to the Jameson Prison Annex. *Id.* ¶ 21. The staff was alerted to Brakeall's size and they prepared a medical bed with a one foot mattress extension. *Id.*

In November 2014, Brakeall returned to the Jameson Prison Annex on an alleged parole violation. *Id.* ¶ 22. Brakeall informed staff that he was too tall to sleep in the cells because the bunks are built across the 6' 5" width of the cell. *Id.* Staff assigned Brakeall the top bunk, which is approximately six feet off the ground. Brakeall was unable to climb into his assigned bed and slept on the floor for six weeks. *Id.* ¶ 24. Staff witnessed Brakeall duck when going through doorways. *Id.* ¶ 23. The Jameson Annex staff claimed to have no record of Brakeall's height, weight or past accommodations. *Id.*

In December of 2014, Brakeall was transferred to the East Hall at the SDSP. *Id.* ¶ 24. East Hall staff also claimed to have no record of Brakeall's height, weight or past accommodations. *Id.* ¶ 25. East Hall also claimed they did not have any orders to keep Brakeall on the first floor, to assign him the bottom bunk, or provide him extra bedding. *Id.* ¶ 25. Several days later, Brakeall was transferred to the West Hall housing unit after being assaulted. *Id.* ¶ 26. In West Hall, Brakeall was assigned the middle bunk of a triple stack. *Id.* The top bunk was approximately twenty inches away from the middle bunk. *Id.* Brakeall regularly bumped his head and shoulders on the upper bunk. *Id.*

Brakeall's parole was reinstated and he was transferred to the Community Transition Program (CTP) at Unit C. *Id.* ¶ 27. Brakeall was initially assigned the top bunk of a triple stack, but he was allowed to move to a middle bunk and was given additional bedding as a temporary extension. *Id.*

In December 2015, Brakeall was detained and placed in East Hall with no height accommodations. *Id.* ¶ 28. In February of 2016, Brakeall was transferred to West Hall after a second and third assault. *Id.* In West Hall, Unit Manager Keith Ditmanson provided Brakeall with an extra mattress. *Id.*

In January of 2016, Brakeall violated his parole and was transferred to MDSP. *Id.* ¶ 29. At MDSP, he was assigned to the West Crawford housing unit and Unit Coordinator Britney Ulmer told Brakeall his bed would be modified once he was transferred to a "permanent" room. *Id.*

In October of 2016, Brakeall was assigned the bottom bunk in room 118. *Id.* ¶ 31. The bottom bunk is approximately five inches off the floor. *Id.* Nine months passed without any modifications to the bed. *Id.* ¶ 32. Without modifications, Brakeall "is forced to sleep with his feet pushed through the cross bars at the bottom." *Id.* Additionally, Brakeall's weight causes persistent hip and back pain, which can be accommodated with a second mattress. *Id.* The bed's close proximity to the floor causes Brakeall constant knee and back pain. *Id.* ¶ 107.

Brakeall spoke to Unit Manager Josh Klimek about the modifications and an extension. *Id.* ¶ 33. Klimek repeatedly replied that "he's 'looking into it.' " *Id.* ¶ 33. Brakeall also kited Klimek several times but received no response. *Id* ¶ 34. Brakeall filed a grievance but received no response. *Id.* ¶ 35. Brakeall signed up to see Klimek during " 'open door' periods at least fifty times in a past months and the only time he has seen Mr. Klimek was in passing at his desk." *Id.* ¶ 36. Kaemingk, Dooley, and Stanwick-Klemik supervise Josh Klimek. *Id.* ¶ 107.

**Overcrowding and Excessive Heat**

The MDSP is a former college designed and built in the 1950-60s. *Id.* ¶ 49. Brakeall wrote to the Bon Homme County zoning and planning for specific design capacity information but received no response. *Id.* at fn. 1. The rooms were originally designed to accommodate two people. *Id.* Despite subsequent remodels, "the fundamental two person structure remains." *Id.* ¶ 50. For example, "There are two desks, two closets, two sets of storage drawers, one window, [and] one fan." *Id.* Three inmates are housed in the rooms and are expected to divide the use of

space themselves. *Id.* ¶ 51. In some areas, the DOC also destroyed walls creating nine-man rooms, which causes trouble and friction between inmates. *Id.* ¶ 52. Kaemingk, Dooley, and DOC established these policies and practices at MDSP. *Id.* at ¶ 110.

West Crawford is a three-story building where each floor has three shower heads, three toilets, three partition-less urinals, and five sinks. *Id.* ¶ 53. There are approximately 70 inmates per floor. *Id.* "The shower heads are arranged so that two shower heads share the same floor space. *Id.* If the plaintiff is using the shower head on the east wall, the shower head on the south wall sprays his thighs. Functionally, there are only two shower heads on each floor." *Id.* There are daily lines to use facilities. *Id.* ¶ 54. The restrooms are cleaned once per day but it is insufficient given the volume of use. *Id.* Furthermore, rules prohibit using the facilities on a different floor. *Id.*

On the first floor of West Crawford, the inmate changing area was converted into a handicap shower. When the handicap shower is occupied, the wheelchair blocks the door to the main shower room. *Id.* ¶ 55. The handicap toilet is a stool on the wall in front of the restroom door with no privacy. *Id.* ¶ 57. Those passing by the hall can observe any handicapped inmate using the facility. *Id.*

There is no ventilation in West Crawford. When inmates shower, the condensation on the ceiling drips on inmates using the toilets, saturates the toilet paper, and wets the floor. *Id.* ¶ 59. Black mold and mildew grow on the shower ceilings. *Id.* The ceilings in the shower and toilet area have to be stripped and repainted several times each year due to the constant moisture and fungal growths. *Id.* Brakeall's respiratory distress is worsened by the mold and requires Brakeall to take medication. *Id.*

Inmate laundry is insufficient to accommodate all of the laundry. *Id.* ¶ 60. Inmate clothing, bedding, and linen is returned still dirty and damp. *Id.* ¶ 60. The prison previously issued white boxer underwear issued to inmates. *Id.* The underwear was commonly stained with urine and feces. *Id.* ¶ 61. The prison frequently reissues used underwear. *Id.* The prison now issues brown boxers to conceal the stains rather than fix the laundry. *Id.*

In September and November of 2016, Brakeall worked in the laundry. *Id.* ¶ 106. The laundry is excessively hot and humid. *Id.* Brakeall lost nearly thirty pounds and suffered dizziness, shortness of breath, and profusely sweated. *Id.* Dooley and the South Dakota DOC maintain these cruel and inhumane conditions. *Id.*

Regular library time for inmates is twice per week for 45 minutes, but it is frequently canceled. *Id.* ¶ 63. Due to the library's capacity and lack of time, Brakeall must sign up multiple times before he can go to the regular library. *Id.* The regular library times conflict with the law library hours, which forces inmates to choose. *Id.* Stanwick-Klimek, Klimek, Kaemingk, Dooley, St. Pierre, and DOC interfered with Brakeall's access to the courts. *Id.* ¶ 113.

East and West Crawford share a walking area and the residents must take separate turns in the yard area. *Id.* ¶ 64. Every other building at MDSP has its own yard and inmates are allowed outside almost all day. *Id.* During the summer, the heat makes the walking areas unusable during the afternoon. *Id.* ¶ 65. West Crawford has the 2:30 to 4:00 pm time slot but inmates rarely go outside during that time. *Id.* There is a shaded area with tables, but inmates are not allowed to use it. *Id.*

The East and West Crawford units were designed and built with air conditioning but no other ventilation. *Id.* ¶ 66. The air conditioning unit later broke and was unhooked. *Id.* In 2010, the East and West Crawford heating systems were rebuilt and new air handling units were

installed in each room with outside vents below the windows. *Id.* ¶ 67. The first floor vents are six inches above the soil. *Id.* The area below these vents should be concrete or asphalt. *Id.* Insects crawl through these vents into inmate rooms. *Id.* The vents provide no air circulation. *Id.*

Brakeall's morbid obesity inhibits his body's ability to regulate body temperature. *Id.* ¶ 68. "As a result of the high heat indices in the building, the excessive heat is damaging his internal organs due to their inability to dissipate heat because of the fat layer." *Id.* Brakeall sweats excessively and experiences severe cramps in his legs and arms. *Id.* Brakeall has fallen repeatedly when attempting to stand for count. *Id.* Brakeall could die from heat stroke. *Id.*

Brakeall was prescribed three antihistamines for respiratory distress. *Id.* ¶ 69. "These drugs act by blocking acety[l]choline, which is the neurotransmitter that drives sweat glands. This interference with the body's ability to sweat in an already toxic environment causes the effects of heat exhaustion to be amplified." *Id.* Brakeall suffers from daily headaches, light-headedness, inability to concentrate, dizziness, and faintness upon standing. *Id.*

Temperatures exceeded a heat index value of 100 degrees and remained that high for ten hours a day. *Id.* ¶ 70. This forced Brakeall to lie on sweat-soaked sheets in front of a fan to avoid further discomfort. *Id.* The air cools at night, but the lack of ventilation prevents the cooler air from entering the building. *Id.* The concrete building continues to radiate heat after the sun sets. *Id.*

The DOC recognized the danger from heat and allowed certain inmates air conditioning units in their rooms. *Id.* ¶ 71. Brakeall raised his issues to medical and Klimek but nothing resulted. *Id.* Defendants responded to Brakeall's grievances by encouraging him to drink water and refrain from strenuous activity. There are no cooling stations or respite areas for inmates to receive temporary relief from the heat. *Id.* ¶ 72.

During part of the year, inmates are permitted to leave their room doors open one foot for ventilation. *Id.* ¶ 73. Cpl. Kelly Tjeerdsma, however, ordered inmates to keep their doors shut for several days when the heat index was above 95 degrees. Tjeerdsma threatened inmates with the SHU for trying to get fresh air in their rooms. *Id.* Tjeerdsma makes inmates close their doors for thirty minutes after count has cleared. The room temperatures raise dramatically this short time. *Id.* ¶ 74. Tjeerdsma regularly closes the inmate day halls, which denies inmates access to ice and drinking water. *Id.* ¶ 77. Tjeerdsma and Klimek conspired to punish inmates by forcing them to close their doors when it is excessively hot. *Id.* ¶ 109.

In summer 2016, a correctional officer told Brakeall about a maintenance worker who measured the temperature inside the building. *Id.* ¶ 75. The temperature was 113 degrees. *Id.* The administration told him " 'not to do that again if you like your job.' " *Id.* Then an inmate kitchen cook used a meat thermometer from the kitchen to measure the temperature in Brakeall's room and the meat thermometer read 105 degrees. *Id.* ¶ 76.

High temperatures and lack of ventilation require the housing unit doors to remain open continuously for months. *Id.* ¶ 79. This allows flies, mosquitos and rodents to enter the building, including the restrooms and inmate rooms. *Id.* Cats and ground squirrels ran around the first floor. *Id.* In order to shower, inmates must first kill the mosquitos. *Id.* ¶ 80. Flies swarm around the trash bins. *Id.* Officers have fly strips in their office but inmates are not allowed to have fly strips or fly swatters. *Id.* Mosquitos, rodents, and flies pose risk to inmate and public health. *Id.* at fn 2.

**Food Service**

Brakeall was prescribed a B-12 vitamin to treat his diet deficiencies and chronic medical issues, including neuropathy. *Id.* ¶ 83. DOH regularly tests for vitamin deficiencies as a

preliminary screening. *Id.* ¶ 114. Dr. Melvin Wallinga, PA Brad Adams, and several nurses told Brakeall that the food service at MDSP is the main reason he cannot lose weight and is unhealthy. *Id.* ¶ 84. Medical staff tells diabetic inmates that the diet at MDSP causes the inability to maintain blood sugar levels in a safe range. *Id.* Medical staff also informed Brakeall and other inmates that the medical staff informed Department of Health (DOH) employees at the annual health conferences that diet is responsible for many inmate health concerns. *Id.*

Kaemingk, Dooley, Antrobus, unknown DOH employees, South Dakota DOH, unknown DOC staff members, unknown CBM Food Service employees, and CBM Food Service conspired to provide below nutritional standards, to use food labeled "not for human consumption, in their food, to change menu items, and to decrease the portion size. *Id.* ¶ 114. The only leafy vegetable provided is iceberg lettuce with salad dressing. *Id.* ¶ 86. No fresh fruit is served. *Id.* The CMB Food Services dietitian approved a starch based diet. *Id.* ¶ 87. It includes mac and cheese, goulash, spaghetti, meat-a-roni, chili mac, stroganoff, jambalaya, and Spanish rice. *Id.* The serving size depends on an inmate's position in line. *Id.* The last inmates serve get smaller portions of overcooked food. *Id.*

Brakeall has shown the officer in charge in the dining hall his tray to complain about serving size or content. *Id.* ¶ 88. Two months ago, Brakeall showed Lt. Dufer his tray and Dufer replied, " 'The last time I took photos of an inmate tray, I was told by the administration to never do that again. It's messed up, but I can't help you.' " *Id.* SCO Mike Miller told Brakeall he saw packages labeled "not for human consumption" while supervising food deliveries on the loading dock. *Id.* ¶ 89.

CBM Food Services provides the commissary for the DOC for profit. *Id.* ¶ 90.

**Law Library**

MDSP issued inmates 7" tablets on June 5, 2017. *Id.* ¶ 37. The tablets have "intermittent access" to LexisNexis. *Id.* The LexisNexis application provides access to "only a portion of the required texts that the DOC refers to in the "settlement agreement," reached after a DOC to eliminate the law library completely in 1998." *Id.*

Inmates have access to some case law through the tablets, but they do not have access to settlement agreements. *Id.* ¶ 38. Inmates are not permitted to use their tablets in the law library. The law library houses the computers with word processors for typing legal documents. *Id.* These computers do not have LexisNexis access. *Id.*

**Religious Discrimination**

Brakeall is Jewish and he established the Jewish service at MDSP in 2006. *Id.* ¶ 39. Until his release in 2012, Brakeall attended almost ever Sabbath and Havdalah service and organized the holy day observations. *Id.* Brakeall observed Passover every year the prison offered it and requested to do the same in 2017. *Id.* ¶ 40. Chapel Activities Coordinator St. Pierre did not allow Brakeall to participate in the Passover meals and did not provide an explanation to Brakeall. *Id.* St. Pierre then initially refused to allow Brakeall to participate in the fast for the ninth of Av on August 1, 2017, because he did not attend Jewish services. *Id.* ¶ 41. Brakeall kited St. Pierre and received a slip for the fast the next day. *Id.* ¶ 42. In the past, Brakeall has been on the fast list and not received the sack lunches. Other inmates have also been removed from the 9th of Av fast list for failing to attend the required percentage of services and were not placed on the fast list later. *Id.* Therefore, Brakeall could not be sure that he would receive a sack lunch until actual delivery. *Id.*

Tammy Mertens-Jones issues orders for all DOC facilities including the order that inmates who do not attend a certain percentage of services will not be allowed to participate in the holy days. *Id.* ¶ 43. Brakeall does not attend Jewish services at MDSP because "his original service has splintered into a homosexual date night service, a Kabala mysticism service, and a messianic Christian service, none of which are compatible with his personal beliefs." *Id.* ¶ 44. When Brakeall attended the new services, the congregants were "baffled" when Brakeall "recited blessings in Hebrew, a language none of them recognized." *Id.* ¶ 45. Brakeall did not attend Purim, Shauvot, or any other celebration to avoid associating with the congregations. *Id.* ¶ 46. Brakeall does not want to reorganize the service. *Id.* ¶ 47. Brakeall only wishes to observe the holy days of his faith. *Id.*

St. Pierre, Mertens-Jones, Dooley, Kaemingk, and unknown DOC staff members conspired to deny Brakeall the ability to observe the holy days by requiring religious tests to determine "who they feel is worthy to participate." *Id.* ¶ 115. The DOC does not provide a kosher meal option. *Id.* ¶ 48.

**Americans with Disabilities Act**

Brakeall suffers from morbid obesity, respiratory issues, endocrine circulation issues, mobility issues, dietary issues, stomach issues and digestive issues. *Id.* ¶ 92. These conditions affect Brakeall's ability to perform manual tasks, eat, sleep, walk, bend, stand, lift, breathe, and thermoregulate. *Id.* ¶ 93. Brakeall was diagnosed with Hashimoto's Thyroiditis, which affects the ability of the body to effectively control and regulate its temperature. *Id.* ¶ 94.

In early August 2016, inmate Patrick Stoner worked as a clerk in the maintenance department for Rob. *Id.* ¶ 95. Rob is not a named defendant. Stoner informed Brakeall that he was being paroled and suggested that Brakeall apply for the job. *Id.* Brakeall kited Rob

requesting an interview. The kite was returned with the answer of just no. *Id.* ¶ 96. Brakeall asked Stoner why and he replied, " 'My boss thinks you'll have a heart attack or something if you have to pick up a box or something and he also said we don't have a chair big enough for you." *Id.*

Since this initial denial, Brakeall has signed up for every unit job posting and sent work applications to every job site and supervisor. *Id.* ¶ 97. A construction technology shop worker informed Brakeall that he gave Prison Industries supervisor Travis Brakeall's application. *Id.* ¶ 98. Travis said to tell Brakeall, " 'We don't hire out of state chomos.' " *Id.* Chomo is prison slang for child molester.

Brakeall is unable to attend recreation due to heat and mobility issues. *Id.* ¶ 99. The DOC provided several canopies in the recreation yard for shade. *Id.* These canopies are now only used in the dog run to protect animals being rehabilitated by inmates as part of a training program. *Id.* ¶ 100. Inmates are exposed to the full sun without any protection. *Id.* The animals are housed in an enclosure in the rec yard with air conditioned kennels. *Id.*

Brakeall is served diet below nutritional standards. *Id.* ¶ 101. The diet cannot maintain good inmate health. *Id.* There are very few fresh vegetables and no fresh fruit. *Id.*

Brakeall cannot access the legal books or word processer he needs because he cannot run or jog to the law library, which is available to inmates on a first come, first served basis. *Id.* ¶ 102.

Brakeall receives delayed and inadequate mental health treatment. *Id.* ¶ 103. Brakeall kited to see mental health several times. *Id.* Klimek emailed Amy Dean in late September 2016. *Id.* Brakeall saw her on the side walk where she confirmed she received the kites and would call him over the next day. *Id.* Months passed with no call. Brakeall then filed a grievance in January

of 2017 and Amy Dean claimed Brakeall never contacted her. *Id.* Brakeall resumed sending kites and Sheila called Brakeall to mental health. *Id.* Brakeall sends almost weekly kites for help with anxiety but has only seen Sheila three times since February due to excessive case load and minimal staff. *Id.*

Brakeall has excessive thirst due to his body's inability to properly cool itself and frequently urinates. *Id.* ¶ 105. Brakeall's visits with parents are cut short so he can use the restroom. *Id.* DOC policy does not allow inmates to use the restroom during visits. *Id.* Maximum security facilities in other states and the federal prison accommodate restroom use during visits. *Id.*

**Policies**

Kaemingk, Dooley, and DOC provide ambiguous rules and policies to allow staff to do whatever they want. *Id.* ¶ 116. The staff lack training and supervision. *Id.* As a result, they regularly violate inmate's constitutional rights by making up their own policies. *Id.* The made up policies are not in the inmate living guide or printed out. *Id.* Klimek creates his own policies and posts them in the unit. Inmates are disciplined under these policies by being written up for " 'conduct which disrupts.' " *Id.* Inmate David Temperley kited Dooley. Dooley responded "that there are 'no unwritten rules.' " *Id.* ¶ 116. This kite was later seized in a shake down and officers denied its existence. *Id.*

**LEGAL STANDARD**

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se

complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985); *Bell Atl. Corp.*, 550 U.S. at 555. If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Bell Atlantic* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965; *see also Abdullah v. Minnesota*, 261 Fed. Appx. 926, 927 (8th Cir. 2008) (citing *Bell Atlantic* noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

## DISCUSSION

I.      **Screening**

   A. **South Dakota DOC and DOH**

The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989) (citations omitted). "Eleventh Amendment immunity extends to states and 'arms' of the state[.]" *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d

1082, 1084 (8th Cir. 2006) (citation omitted). Thus, Brakeall's claims against the DOC and the DOH, state entities, are barred by the Eleventh Amendment.

### B. Unexhausted Claims

The PLRA provides that an inmate must exhaust all available administrative remedies before bringing an action with respect to prison conditions under either section 1983 of this title, or any other federal law. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This mandatory exhaustion requirement applies broadly to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); see also, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in [federal] court."). The PLRA requires "immediate dismissal" of all unexhausted claims. *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

Before filing this action, Brakeall was required to fully and properly exhaust his administrative remedies as to each claim in the complaint. *See Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."). The prisoner must exhaust his administrative remedies even if the precise relief he seeks is not available through the prison grievance system." *Booth*, 532 U.S. at 739-41. In order to properly exhaust administrative remedies, Brakeall is required to "tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process." *Rothman v. Lombardi*, No. 4:11-CV-639-CEJ, 2012 WL 639713 at *2 (E.D. Mo. Feb. 27, 2012) (internal quotation marks and quotation omitted).

15

Here, failure to exhaust is apparent from the face of the complaint. Brakeall alleges that he filed grievances concerning bed modifications, the heat, and seeing mental health. Docket 1 ¶¶ 34, 72, 103. Brakeall fails to allege that he exhausted administrative remedies regarding the restrooms (*Id.* ¶¶ 53-59), food service (*Id.* ¶¶ 83-90), laundry (*Id.* ¶¶ 60-61), library (*Id.* ¶ 63), religious holidays (*Id.* ¶¶ 39-48), ADA compliance beyond seeing mental health (*Id.* ¶¶ 92-105) and prison policies (*Id.* ¶ 116.). Therefore, dismissal is appropriate for these claims because Brakeall has not exhausted his administrative remedies.

## C. Eighth Amendment Cruel and Unusual Punishment Claims

"The Constitution does not mandate comfortable prisons; it prohibits inhumane ones." *Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995)* (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir.2004); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir.1998). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Even if no single condition of confinement would be unconstitutional in itself, the cumulative effect of prison

conditions may subject inmates to cruel and unusual punishment. *Id.* at 363–64; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir.1989). The Court will separately address each of Brakeall's Eighth Amendment cruel and unusual punishment claims.

### 1. Bed

Brakeall claims Klimek denied Brakeall bed modifications to accommodate his large size. Docket 1 ¶¶ 30-36. Brakeall alleges that he is forced to sleep five inches off the ground with his feet pushed through the cross bars causing persistent back and hip pain. *Id.* ¶ 32. Brakeall contends that Unit Coordinator Ulmer said the bed would be modified and Klimek promised to look into the modification. *Id.* ¶¶ 30-36. Kaemingk, Dooley, and Stanwick-Klemik supervise Klimek. *Id.* ¶ 107. The Eighth Circuit has held that far worst sleeping conditions fail to rise to the level of a constitutional violation. *See, e.g.*, *Goldman v. Forbus*, Case No. 00–2462WA, 2001 WL 838997 at *1 (8th Cir. July 26, 2001) (unpublished opinion) (finding that two nights sleeping on the floor and being sprinkled with urine was not a constitutional violation); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83–84 (8th Cir.1996) (holding that four consecutive days without clothing, a mattress, or bedding was not a constitutional violation). But Brakeall's complained condition existed for a much longer duration and it is the duration that is allegedly causing some of the physical injury. Thus, Brakeall's § 1983 cruel and unusual punishment claim regarding his bed against Klimek is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915. Brakeall's § 1983 cruel and unusual punishment claim regarding his bed against Kaemingk, Dooley, and Stanwick-Klemik are dismissed, because the only allegation against them is their supervision of Klimek. "A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994).

## 2. Heat

A lack of an air-cooling system and hot temperatures alone are not a sufficiently severe deprivation that satisfies the objective component of an Eight Amendment violation. *See Raugust v. Ferriter*, No. CV07–55H–DWM–RKS, 2008 WL 5436016, at \*5 (D. Mont. June 11, 2008) (holding that an allegation that excessive heat has caused sickness insufficient to meet the objective requirement for an unconstitutional condition of confinement); *Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir.2004) (holding a prisoner's allegation failed to satisfy the objective requirement even when "[o]n average, inmates on the . . . [u]nit may have experienced temperatures over ninety degrees nine percent of the time during the months of July and August 1998 and July of 1999"). To make out an Eighth Amendment violation, the inmate must offer proof that the conditions are not just uncomfortable, but that they are seriously deficient and have caused severe discomfort. *See, e.g., DeMaio v. Mann*, 877 F. Supp. 89 (N.D. N.Y. 1995).

Brakeall's complaint with respect to excessive heat at MDSP alleges that he was subjected to cruel and unusual punishment as a result of his obesity and prison authority's failure to ameliorate the condition. Brakeall alleges that temperatures exceeded a heat index value of 100 degrees and remained that high for ten hours a day. *Id.* at ¶ 70. There are no cooling stations or respite areas for inmates to receive temporary relief from the heat. *Id.* at ¶ 72.

Brakeall alleges the ventilation system is also inadequate, particularly on the first floor where vents are only six inches above the soil. *Id.* at ¶ 67. Inmates are sometimes permitted to leave their room doors open one foot for ventilation, but Tjeerdsma frequently taken away on hot days. *Id.* at ¶ 73. Tjeerdsma and Klimek allegedly conspired to punish inmates by forcing them to close their doors when it is excessively hot. *Id.* at ¶ 109.

18

Brakeall alleges his morbid obesity inhibits his body's ability to regulate body temperature. *Id.* at ¶ 68. Brakeall claims to sweat excessively, to experience cramps in his legs and arms, and to have fallen repeatedly when attempting to stand. *Id.* Brakeall was prescribed three antihistamines for respiratory distress and these drugs further interfere with his body's ability to sweat. *Id.* at ¶ 69. Brakeall suffers from daily headaches, light-headedness, inability to concentrate, dizziness, and faintness upon standing. *Id.*

The alleged lack of an air-cooling system, high temperatures, poor ventilation, and health conditions could combine to be a sufficiently severe deprivation that satisfies the objective component of an Eighth Amendment violation. Brakeall's Eight Amendment claim of excessive heat at MDSP against Tjeerdsma and Klimek is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915.

**D. ADA Claim**

Brakeall alleges several violations ADA. Brakeall, however, only alleges that he attempted to exhaust his administrative remedies regarding access to mental health treatment. Brakeall alleges that he received delayed and inadequate mental health treatment. *Id.* ¶ 103. Brakeall fails to allege who this claim is against and requests no relief regarding the allegedly inadequate mental health treatment. Thus, Brakeall fails to state a claim and his ADA claim is dismissed.

Accordingly, it is ORDERED

1. Defendants DOC, DOH, Stanwick-Klimek, Kaemingk, Dooley, St. Pierre, Mertens-Jones, Antrobus, unknown CBM Food Service Staff, unknown DOC staff members, and unknown DOH employees are dismissed without prejudice.

2. Brakeall's Eighth Amendment Cruel and Unusual Punishment claims against Klimek and Tjeerdsma survive screening.

3. Brakeall's ADA compliance claim regarding mental health treatment fails to state a claim and is dismissed without prejudice.

4. Brakeall's remaining claims involving the restrooms, food service, laundry, library, religious holidays, ADA compliance, and prison policies are dismissed without prejudice for failure to exhaust administrative remedies.

5. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Brakeall so that he may cause the summons and amended complaint to be served upon the defendants Klimek and Tjeerdsma.

6. Brakeall shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

7. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, amended complaint, and this order, upon the defendants.

8. Defendants will serve and file an answer or responsive pleading to the amended complaint on or before 21 days following the date of service or 60 days if the Defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

9. Brakeall will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the

clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

10. Brakeall will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

DATED December 28, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:

JOSEPH HAAS, CLERK

BY: _____

(SEAL)          DEPUTY